DECISION AND JUDGMENT ENTRY
{¶ 1} Janet L. Bruce appeals the trial court's judgment, arguing that the court failed to follow the statutory procedure for imposing consecutive sentences, and that the imposition of consecutive sentences is not supported by the record. Bruce also argues that her trial counsel was ineffective in failing to object to the imposition of an improper sentence. We conclude that the record does not support the trial court's finding that the victims of Bruce's crimes suffered great or unusual harm. We also conclude that the trial court applied an improper standard for determining the contents of Bruce's "criminal history" when it found that it could not consider criminal acts that formed the basis of the indictment but were dismissed under the plea agreement. Thus, we reverse and remand this matter to the trial court for re-sentencing.
 {¶ 2} In June 2000, a grand jury indicted Bruce on fifteen counts of theft and burglary as a result of her actions during a one-week period in July 1999. Subsequently, Bruce pled guilty to one count of burglary, in violation of R.C. 2911.12(A)(3), a felony of the third degree, and two counts of burglary, in violation of R.C. 2911.12(A)(2), both felonies of the second degree. The State dismissed the remaining charges against Bruce under a plea agreement. The following facts relate to the three burglaries to which Bruce pled guilty.
 {¶ 3} On July 10, 1999, Bruce and a co-defendant went to the home of Robert Burton while Mr. Burton was at his wife's funeral. Mr. Burton's house was unlocked at the time so visitors could bring food and flowers during his absence. Bruce and her co-defendant stole Mr. Burton's black nylon wallet containing his VISA card as well as other miscellaneous cards and his driver's license, a bottle of Valium, Mrs. Burton's wallet containing $150.00 in cash and miscellaneous credit cards, and some checks. During the next few days, several checks were written on Mr. Burton's account and various items were charged on the credit cards.
 {¶ 4} On July 14, 1999, Bruce stopped at the house of Wilbur and Ann Louis Spindler, an elderly couple, asking for directions and to use the bathroom. Once inside the Spindlers' home, Bruce stole some prescription medicine, Darvocet.
 {¶ 5} On July 15, 1999, Bruce and a co-defendant went to the home of Virginia and Terry Perry. Mr. and Mrs. Perry were not at home but their two minor daughters were. Bruce and the co-defendant knocked on the door and asked to use the bathroom. Once inside the home, Bruce stole two bottles of prescription medication, Claritin and Hydroxyquin.
 {¶ 6} On October 2, 2000, Bruce appeared before the Washington County Court of Common Pleas for sentencing. The trial court sentenced Bruce to three years in prison on each count of burglary, all counts to run consecutively, for a total aggregate sentence of nine years imprisonment.
 {¶ 7} Bruce appealed her sentence to this Court, arguing that the trial court erred in imposing a prison sentence in lieu of community-control sanctions and that the trial court erred in imposing consecutive sentences because it failed to make the findings required by R.C. 2929.14(E) and to state its reasons for imposing consecutive sentences as required by R.C. 2929.19(B). In State v. Bruce, Washington App. No. 00CA48, 2002-Ohio-6136, we held that the trial court did not err in imposing a prison sentence on Bruce rather than community-control sanctions but that the trial court's decision to impose consecutive sentences was contrary to law as the court failed to make the requisite statutory findings and did not explain its reasons for imposing consecutive sentences. We remanded the case to the trial court for re-sentencing solely on the issue of whether the sentences should be served consecutively. In the initial appeal, we did not consider whether the record supported the imposition of consecutive sentences.
 {¶ 8} In July of 2002, Bruce appeared before the trial court for re-sentencing. After hearing arguments from both sides and a statement from Bruce, the court re-imposed the original sentence, three years imprisonment on each burglary count, to run consecutively, for an aggregate total of nine years imprisonment. The court issued its journal entry imposing sentence and Bruce timely filed this appeal. She asserts the following assignments of error: "ASSIGNMENT OF ERROR NO. I — The trial court erred in sentencing Janet Bruce to three consecutive terms in prison thereby denying her due process as provided for by theFifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution. [Citations omitted.]ASSIGNMENT OF ERROR NO. II — Janet Bruce was denied her constitutional right to effective assistance of counsel under the Sixth
and Fourteenth Amendments to the United States Constitution and ArticleI, Sections 10 and 16 of the Ohio Constitution when her attorney failed to object to the trial court's improper sentence. [Citations omitted.]"
 {¶ 9} R.C. 2953.08(A)(4) provides for an appeal if a sentence is contrary to law. If we find, by clear and convincing evidence, that the record does not support the sentence or that the sentence is contrary to law, we may increase, reduce, modify or vacate the sentence. R.C.2953.08(G)(1). In this context, we do not substitute our judgment for that of the trial court nor do we simply defer to its discretion. Statev. Keerps, Washington App. No. 02CA2, 2002-Ohio-4806. Rather, we will look to the record to determine whether the sentencing court: (1) considered the statutory factors; (2) made the required findings; (3) relied on substantial evidence in the record to support those findings; and (4) properly applied the statutory guidelines. See State v. Dunwoody
(Aug. 5, 1998), Meigs App. No. 97CA11, citing Griffin Katz, Ohio Felony Sentencing Law (1998 Ed.), Section 9.16.
 {¶ 10} Generally, trial courts in Ohio must impose concurrent prison sentences. R.C. 2929.41(A). However, a trial court may impose consecutive prison sentences under R.C. 2929.14(E)(4) when: "* * * the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following: (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or2929.18 of the Revised Code, or was under post-release control for a prior offense. (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct. (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." The inquiry under R.C.2929.14(E)(4) is a "tripartite procedure." State v. Haugh, Washington App. No. 00CA18, 2001-Ohio-2426. First, the sentencing court must find that consecutive sentences are "necessary to protect the public" or to "punish the offender"; second, the court must find that the consecutive sentences are "not disproportionate" to the seriousness of the offender's conduct and the "danger" she poses; and finally, the court must find the existence of one of the enumerated circumstances in R.C. 2929.14(E)(4)(a) through (c). Id. The verb "finds," as used in R.C. 2929.14(E)(4), means that the court "must note that it engaged in the analysis" required by the statute. See State v. Edmonson (1999), 86 Ohio St.3d 324, 326,1999-Ohio-110, 715 N.E.2d 131; State v. Brice (Mar. 29, 2000), Lawrence App. No. 99CA21.
 {¶ 11} Additionally, the court must comply with R.C. 2929.19(B)(2)(c) which requires that the sentencing court "make a finding that gives its reasons for selecting the sentences imposed * * * if it imposes consecutive sentences under section 2929.14 of the Revised Code." The requirement that a court give its reasons for selecting consecutive sentences is separate and distinct from the duty to make the findings required by R.C. 2929.14(E)(4). Brice, supra. Thus, after a sentencing court has made the required findings under R.C. 2929.14(E)(4), it must then justify those findings by identifying specific reasons supporting the imposition of consecutive prison terms. Id.; see, also, State v.Blair (Dec. 27, 1999), Scioto App. Nos. 98CA2588 and 98CA2589.
 {¶ 12} In its sentencing entry of August 1, 2002, the court specifically found that: (1) consecutive sentences are necessary in this case to protect the public from future crime by this defendant and to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and are not disproportionate to the danger the offender poses to the public; and (3) the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses adequately reflects the seriousness of the offender's conduct and the three separate crimes represent a history of criminal conduct that demonstrates that consecutive sentences are necessary to protect the public from future crime by Bruce. Moreover, the court made these findings during the re-sentencing hearing. (Tr. at pp. 19-20.) Therefore, we conclude that the court complied with R.C.2929.14(E)(4).
 {¶ 13} However, Bruce argues that the court erred in failing to comply with the mandate of R.C. 2929.19(B) that requires the court to state the reasons for the findings it made under R.C. 2929.14. Bruce contends that the court erred in failing to explain its reasons as to why consecutive service is necessary to protect the public from future crime or to punish Bruce, and failed to state why the consecutive sentences imposed are not disproportionate to the seriousness of her conduct and to the danger she poses to the public. Apparently, Bruce does not dispute that the court stated its reasons for finding that the harm caused by Bruce's conduct was so great or unusual that no single prison term for any of the offenses committed adequately reflects the seriousness of the offender's conduct.
 {¶ 14} In its sentencing entry of August 1, 2002, after finding that all three prongs of R.C. 2929.14(E)(4) were present, the trial court stated that "the harm in each case [of burglary committed by Bruce] was great, unusual, and unique, in that,
 {¶ 15} [1] as to Mr. Burton, he was attending his wife's funeral, and should be free from unwanted trespass at that special time of grieving, especially when his house was purposely left open so family and friends could bring their expressions of condolence at his time of grief; and, [2] as to the Spindlers, they were an elderly couple, living on fixed incomes, in need of the medication they had ordered in large quantities by mail, to save money, and in their advanced years they need to feel safe in their home, but instead were duped by the conduct of this defendant, and were deprived of needed medications by her conduct, and [3], as to the Perry home, innocent juveniles, left at home by their parents, were duped by this defendant and her cohort, the harm there being great because impressionable youngsters may now be suspicious of all persons, even those who are really in need of help, and/or the parents may now feel compelled to always take their children with them when they leave the home."
 {¶ 16} "The Court agrees with counsel for Defendant and disagrees with counsel for the State that it can consider all of the other conduct of Defendant in the other counts of the Indictment which were dismissed as part of a plea agreement, and the Court specifically does not consider those dismissed indictment counts in making its decision as to whether to impose the sentences consecutively.
"The Court, however does consider that the three crimes to which defendant entered guilty pleas, were separate, distinct crimes, committed on different days, against different victims, and each presents the court with a unique set of facts creating great harm to the particular victim or victims, and, thus the three separate crimes do represent a history of criminal conduct that does demonstrate to this Court that consecutive sentences are necessary to protect the public from future crime by this offender."
 {¶ 17} A review of the transcript of the hearing reveals further reasons why the court believed the imposition of consecutive sentences was appropriate. While we continue to believe it is preferable for the sentencing entry to specifically address the reasons that support the court's finding under R.C. 2929.14(E)(4), if the reasons are discernable from the record, the court has complied with R.C. 2929.19(B)(2)(c).[1]
See State v. Blair (Dec. 27, 1999), Scioto App. Nos. 98CA2588 and 98CA2589. At the hearing, the court noted that Bruce had a pattern of drug and alcohol abuse, committed these crimes in order to obtain drugs, caused psychological and economic harm to her victims, acted in concert with at least one other defendant, that the occupants of the homes Bruce entered were elderly people and children, that Bruce has some criminal history though not serious convictions, and that these burglaries had occurred on three separate dates. When considered in toto, we believe that the trial court's statements at the sentencing hearing and in its judgment entry sufficiently state its reasons for imposing consecutive sentences and, therefore, the court complied with R.C. 2929.19(B)(2)(c).
 {¶ 18} Next, Bruce argues that the trial court's imposition of consecutive sentences is not supported by the record and, consequently, this Court should modify Bruce's sentence to concurrent terms of imprisonment or vacate Bruce's sentence and order a new sentencing hearing.
 {¶ 19} As noted previously, our function in reviewing Bruce's sentence is not to substitute our judgment for that of the trial court, but rather to determine if there is substantial evidence in the record to support the trial court's imposition of consecutive sentences. Keerps, supra. In order to uphold the imposition of consecutive sentences here, the record must demonstrate that both of the first two prongs of R.C.2929.14(E)(4) and one of the three criteria delineated in R.C.2929.14(E)(a)-(c) are applicable. As to the third prong of R.C.2929.14(E)(4), the trial court found both subsection (b) — that the harm caused by the multiple offenses was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct — and subsection (c) — that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender — apply in the instant case. Our review of the record reveals that there is not sufficient support to justify the court's findings as to subsection (b) and that the court failed to consider certain relevant evidence as to subsection (c), the absence of which renders the court's findings as to that section unsupported.[2]
 {¶ 20} Although the court found that the victims of Bruce's crimes suffered "great or unusual" harm pursuant to R.C. 2929.14(E)(4)(b), the record does not support this finding. Despite the court's statements in its sentencing entry that the Spindlers lived on fixed incomes, were in need of the medication that had been stolen, and were deprived of needed medication, there is no support for any of these findings in the record. As to the Perrys, the court surmised that these victims suffered great harm because their children may now be suspicious of all persons and/or the parents may now feel compelled to always take their children with them when they leave home. The court did not specifically find that Mr. Burton suffered great harm but merely found that, given the fact that he was at his wife's funeral, he should be free from unwanted trespass.
 {¶ 21} While we cannot disagree that the three burglaries created the potential for great or unusual harm, there is simply no evidence in the record that great or unusual harm actually resulted from these burglaries. In his statement to the Washington County Victim's Advocate, Mr. Burton did not attempt to quantify the harm he suffered but simply stated, "I leave it up to the Judge to give punishment that they deserve. I do not want any restitution from the items stolen. I do wish to get my cards back but I understand that they are long gone. They are old enough they should know better." Likewise, there is no indication that either the Perrys or the Spindlers suffered great or unusual harm and a victim impact statement was not submitted by either family. Therefore, we must conclude that the trial court erred in finding that R.C. 2929.14(E)(4)(b) is applicable in the instant action.
 {¶ 22} The trial court also found that Bruce's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by Bruce. Bruce's prior criminal history included convictions for only minor offenses — failure to file income tax, contempt of court due to non-payment of a fine, no seat belt, expired registration, failure to transfer registration and littering — which the sentencing court identified as not being "serious" convictions. (Tr. at p. 20.) Nonetheless, the trial court found R.C. 2929.14(E)(4)(c) applicable based solely on the three burglary convictions for which Bruce was being sentenced.
 {¶ 23} In reaching its conclusion that R.C. 2929.14(E)(4)(c) applies to Bruce, the trial court specifically declined to consider the twelve counts that were dismissed under Bruce's plea agreement with the State. In its sentencing entry, the trial court noted that it "agrees with counsel for Defendant and disagrees with counsel for the State that it can consider all of the other conduct of Defendant in the other counts of the Indictment which were dismissed as part of a plea agreement, and the Court specifically does not consider those dismissed indictment counts in making its decision as to whether to impose the sentences consecutively." (Journal Entry of Aug. 1, 2002 at p. 5.) The court's finding in this regard is erroneous.
 {¶ 24} R.C. 2929.14(E)(4)(c) "permits the court to consider the offender's total criminal history — all of the crimes of conviction and all past offenses, adult and juvenile." Griffin Katz, Ohio Felony Sentencing Law (2002 Ed.), Section 7.17. Additionally, alleged offenses dismissed pursuant to a plea agreement can be considered by the trial court when it imposes the sentence. State v. Williams, Montgomery App. No. 19026, 2002-Ohio-2908; State v. Carty, Cuyahoga App. No. 79213, 2002-Ohio-502. Therefore, the trial court could have properly considered not only the offenses for which Bruce was being sentenced, but also the twelve counts which were dismissed by the State in determining Bruce's "history of criminal conduct."
 {¶ 25} The focus of R.C. 2929.14(E)(4)(c) is not the seriousness of the offender's conduct — an issue considered under R.C.2929.14(E)(4)(a) and (b) — but the likelihood that the offender will commit future crime. Katz Griffin, supra. "It is the necessity of public protection from the offender." Id.
 {¶ 26} Considering only the three burglaries to which Bruce pled guilty, as the trial court did, we cannot conclude that the record supports a finding that Bruce's criminal history demonstrates a stronglikelihood of recidivism such that the imposition of consecutive sentences is necessary. Bruce is a long-time drug and alcohol abuser whose addiction caused her to engage in criminal activity. However, despite her many previous years of drug and alcohol abuse and the obvious fact that she was a danger to herself throughout this period of addiction, there is no evidence that Bruce previously turned to a life of crime. Nonetheless, the trial court apparently surmised that, based solely on the fact that she committed three burglaries within a short period of time, she is likely to offend again. We simply cannot conclude that there is substantial evidence in the record to support the court's finding that based on these three burglaries, two of which were the product of deceptions by Bruce rather than entries without permission, Bruce has a strong likelihood of recidivism.
 {¶ 27} Nonetheless, when these three burglaries are considered in conjunction with the other twelve counts of theft and burglary which were dismissed, it is possible that a different conclusion may be reached. While we recognize that it is within our authority as an appellate court to "increase, reduce, [or] modify" Bruce's sentence under R.C.2953.08(G)(1), we conclude that the better practice is to allow the trial court to make sentencing decisions. Therefore, we remand this matter to the trial court for reconsideration as to whether the imposition of consecutive sentences is appropriate under the correct standard of law. Appellant's first assignment of error is sustained.
 {¶ 28} In her second assignment of error, Bruce alleges that her trial counsel was ineffective in that he failed to object to the imposition of an improper sentence. Our ruling as to Bruce's first assignment of error renders this issue moot and, therefore, we will not address this argument. App.R. 12(A)(1)(c).
 {¶ 29} Having sustained Bruce's first assignment of error, we reverse and remand this matter to the trial court for further proceedings consistent with this opinion.
JUDGMENT REVERSED AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that the Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Kline, J.: Concur in Judgment and Opinion.
[1] Bruce argues that R.C. 2929.19(B) requires that the court state its reasons for imposing consecutive sentences at the sentencing hearing. However, in State v. Littlefield, Washington App. No. 02CA19, 2003-Ohio-863, we specifically rejected this argument, holding that because a court speaks through its journal entry, we will not require a trial court that articulates its findings and reasons for consecutive sentences in the journal entry to do so at the sentencing hearing also. This issue is currently pending before the Supreme Court of Ohio in Statev. Comer, Lucas App. No. L-99-1296, 2002-Ohio-233. See State v. Comer,95 Ohio St.3d 1473, 2002-Ohio-2444, 768 N.E.2d 1182 (Table).
[2] Subsection (a) of R.C. 2929.14(E)(4) is clearly inapplicable and, therefore, we do not address this provision.